UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
MONICA PINTO,                                               :
                                                            :
                              Plaintiff,                    :
                                                            :
                                                            :          18-cv-1852 (KBF)
              -v-                                           :
                                                            :          <u>OPINION & ORDER</u>
NEW YORK CITY ADMINISTRATION FOR                            :
CHILDREN'S SERVICES, CITY OF NEW                            :
YORK, JEANETTE VEGA, and ZORAIDA                            :
DIAZ,                                                       :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 11, 2018

KATHERINE B. FORREST, District Judge:

On March 1, 2018, Monica Pinto ("plaintiff") commenced this disability discrimination action against her employer, the City of New York ("City") and the New York City Administration for Children's Services ("ACS"); Jeanette Vega ("Vega"); and Zoraida Diaz ("Diaz," together with Vega, "the individual defendants," and collectively, with City, ACS, and Vega, "defendants"). (<u>See generally</u> Compl., ECF No. 1.)  Plaintiff brings claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 <u>et seq</u>, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 <u>et seq</u>.  She alleges, in sum, that City and ACS discriminated against her, failed to accommodate her disabilities, and retaliated against her for engaging in a protected activity. Additionally, plaintiff alleges that Vega and Diaz aided, abetted, incited, compelled, and coerced this discriminatory conduct.  (<u>See</u> Compl. ¶ 178.)

On April 30, 2018 defendants moved to dismiss all counts. (ECF No. 15), and plaintiff opposed on May 14, 2018, (ECF No. 17). On May 18, this Court notified the parties that it was converting the motion to one for summary judgment and provided them with an opportunity to submit additional materials. (ECF No. 19.) Plaintiff filed supplemental opposition papers on May 25 (ECF No. 23), and the defendants replied on June 15, 2018, (ECF No. 28).

For the reasons discussed below, the Court hereby GRANTS the defendants' converted motion for summary judgment in its entirety.

I.    BACKGROUND

The following facts are taken from the record, including the parties' respective submissions under Local Civ. R. 56.1,[1] and are undisputed unless otherwise noted.

A.    The Parties

Plaintiff, who resides on Long Island, has been employed for City and ACS as a Child Protective Specialist ("CPS") since 2007. (Defs.' Resp. to Pl.'s Local Rule 56.1 Statement of Undisputed Material Facts ("SUF") ¶¶ 1-2, ECF No. 37.) A CPS "respond[s] directly to reports of child abuse and/or neglect" and "engage[s] and partner[s] with families and community resources to ensure the safety and well-

---

[1] Pursuant to Local Civ. R. 56.1(c), "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted…in the statement required to be served by the opposing party." Here, the Court is confronted with an atypical situation in that nonmoving party submitted the initial statement of undisputed facts, and the moving party submitted an opposition statement. The Court will deem any uncontroverted statements in plaintiff's submission as undisputed, but based on this procedural posture, the Court has gone directly to the record.

being of children throughout New York City." (Decl. of Marjorie Mesidor ("Mesidor Decl.") Ex. L at 2, ECF No. 24-12.) A CPS's weekly schedule divided into "days you will work making field visits and . . . days you will work in the office." (Id. at 4.) On field visit days, a CPS "will work primarily in the field making visits to the homes of the families you need to visit [and] may also be required to visit schools and other community agencies." (Id.)

Defendant Jeanette Vega, at all relevant times, worked as a Child Protective Manager for ACS, and was charged with supervising plaintiff. (SUF ¶ 6; Compl. ¶ 14.) Defendant Zoraida Diaz, at all relevant times, worked in ACS's Office of Equal Employment Opportunity as the Administrative Community Relations Specialist. (SUF ¶ 7.)

B.      Plaintiff's Initial Request for a Reasonable Accommodation

On July 18, 2016, plaintiff emailed a reasonable accommodation request to Vega. (Decl. of Leora R. Grushka in Supp. of Defs.' Mot. for Summ. J. ("Grushka Decl.") Ex. 1 at 40, ECF No. 36-1.) Her email included a handwritten form from a therapist, Dr. Bernice Reinharth, which discussed her disabilities and proposed various accommodations. After Diaz informed her that the note was hard to read on July 27, plaintiff sent back a typewritten version of the note on August 22. (Grushka Decl. Ex. 2 at 8-9, ECF No. 36-2.)

In that letter, Dr. Reinharth explained that plaintiff was suffering from claustrophobia. Specifically, she was afraid of "public transportation, tunnels, elevators, enclosed spaces, [and] darkened or airless rooms." She also

characterized plaintiff's condition as "severe." (Id. at 11.) Accordingly, Dr. Reinharth recommended that plaintiff be allowed to "avoid[]" elevators, crowded public transportation, work spaces that are not well ventilated (windowless or lacking A/C), [and] fieldwork." (Id.)

On September 6, Diaz offered plaintiff an accommodation in ACS's Staten Island office, but plaintiff swiftly rejected the offer, explaining that "Staten Island is not a feasible option . . . due to distance and cost," particularly given "the cost of [driving over] the Verrazano Bridge." (Id. at 24.) Shortly thereafter, on September 16, plaintiff was offered an accommodation at ACS's 392 First Avenue location in Manhattan, where she would be able to work on the ground floor. (Grushka Decl. Ex. 1 at 16, Ex. 2 at 22; SUF ¶ 20.) Plaintiff again refused, explaining in an email that this site would "also [pose] a travel hardship for me with my condition" and stating her preference for "a reasonable accommodation anywhere in Brooklyn or Queens, as any other borough poses a travel hardship for me." (Grushka Decl. Ex. 2 at 22).[2]

C.    Plaintiff's Alleged Confrontation with Vega

On September 19, an ACS Deputy Director, Ronald Bridges, contacted Vega regarding an email that plaintiff sent earlier that afternoon in which she complained to Bridges, Vega, and others about the procedures for transferring a case to another borough. (Grushka Decl. Ex. 1 at 47.) Bridges characterized

---

[2] Plaintiff would go on to repeatedly reiterate that preference in subsequent emails. (See id. at 34 (October 3 email: "I wish to be accommodated in Brooklyn or Queens. I don't care what office."); id. at 83 (December 6 email: "I do not know what the impediment is to getting an appropriate accommodation in Brooklyn or Queens . . . .").)

plaintiff's tone as one that "evokes a hostile work environment and is a breach of [the] Employee Code of Conduct." Specifically, he referred to her language as "abusive, demeaning, insulting, and threatening."

Three days later, according to plaintiff, Vega shouted at her in front of other employees and then, in Vega's office, accused plaintiff of violating the agency's code of conduct. (SUF ¶ 24.) Plaintiff also alleges that Vega accused her of bringing her "personal problems" into work and that Vega stated that she "had been ready to speak to the Brooklyn Commissioner on plaintiff's behalf regarding her reasonable accommodation request [which] seemed to indicate that Defendant Vega was no longer willing to [do so]." (Compl ¶ 41.)

In early November, Diaz called plaintiff to offer her an accommodation at ACS's 150 William Street office in Manhattan, but she refused, explaining in a November 4 email that the position "would require me to add train travel to my commute [and] exacerbat[e] my condition" and that she could not take an elevator the site's fourteenth-floor office. (SUF ¶ 37; Grushka Decl. Ex. 2 at 79.) She also reiterated her preference to be placed in a Brooklyn or Queens office.

D.     Plaintiff Objects to Being Accommodated in a Brooklyn Office

On January 27, 2017, Diaz called plaintiff to offer her an accommodation at ACS's 1274 Bedford Avenue location in Brooklyn. (SUF ¶ 39.) But when plaintiff reported to work at the Bedford Avenue location, no one in her new line of supervision knew about the accommodation. When plaintiff reached out to Diaz for clarification, she was told that the accommodation had been changed to ACS's 185

5

Marcy Avenue location, a second-floor office that is also in Brooklyn. (SUF ¶¶ 43-45, 47-48.)

But plaintiff again refused, complaining that she was "being set up for failure" due to her "extensive history" with the supervisor at Marcy Avenue. (SUF ¶ 47; Grushka Decl. Ex. 3 at 3-4, ECF No. 36-3.)[3] She eventually spoke with an attorney for ACS regarding her concerns, but was nevertheless instructed to report to her newly assigned location. (SUF ¶¶ 52-53; Grushka Decl. Ex. 1 at 118.) Still, she decided not to show, and when she failed to report on February 3, she received a formal memorandum citing her for "insubordinate[ion] and "noncompliance" and charging her with a violation of the agency's code of conduct. (Grushka Decl. Ex. 6, 36-6.)

That same day, plaintiff filed an official charge of discrimination with the EEOC, alleging that City and ACS discriminated against her based on disabilities and denied her a reasonable accommodation. (Mesidor Decl. Ex. J, ECF No. 24-10.) In the accompanying Statement of Facts, she explained that she was suffering from claustrophobia and anxiety, and she accused City and ACS of offering "only wholly unreasonable transfers that would have put an undue burden on [her] and did not actually accommodate her disabilities." (Id. ¶¶ 51-52.)

---

[3] It is beyond clear that plaintiff rejected this accommodation offer simply because of her new supervisor. (See Grushka Decl. Ex. 2 at 117 ("I am not refusing Marcy Avenue as an accommodation, simply the person who I am supposed to report to . . . .").)

Ultimately, on February 6, plaintiff took leave under the Family Medical Leave Act ("FMLA") after having to go to the emergency room with tightness and pain in her chest. (Mesidor Decl. Ex. C ¶ 80, ECF No. 24-C; SUF ¶ 66.)

E.     Plaintiff Returns to Work and Her Accommodation Is Extended

When her FMLA leave period ended in April, plaintiff sought to return to work with a reasonable accommodation that would again allow her "avoid field work [and] [e]levators and unventilated work places." (Grushka Decl. Ex. 3 at 8-10.) Defendants accommodated her at the Marcy Avenue location in a "work area…on the second floor" but this time with a different supervisor. Plaintiff reported to Marcy Avenue for work on April 20. (SUF ¶ 79.) But just one week later, plaintiff requested a new reasonable accommodation after complaining that she needed to park her car at a different train station and then take the train to work each morning, which had triggered "two [separate] panic attacks on the subway attempting to get to work." (Id. ¶¶ 86, 89.)

On May 3, plaintiff also submitted a letter from her therapist requesting that her accommodation be extended for three additional months. (SUF ¶ 91; Grushka Decl. Ex. 7 at 7, ECF No. 36-7.) On June 7, ACS granted her request but told her that she would continue to be accommodated at the Marcy Avenue location. (SUF ¶ 95.) And on August 21, she was given another extension. (Id. ¶ 106.)

F.     Plaintiff Rejects Accommodation Offers in Queens

Months later, on January 3, 2018, ACS contacted plaintiff about a position in Queens and asked her to send a resume. (SUF ¶¶ 91, 95, 106; Grushka Decl. Ex. 4

7

at 3, ECF No. 36-4.) ACS had to follow up by email twice before plaintiff finally responded. When she finaly did, she rejected the offer and asked to be accommodated at one of four specific offices in Brooklyn. (Grushka Decl. Ex. 4 at 5-8.)

Weeks later, on January 18, plaintiff received an official memorandum from ACS addressing her "significant number of absences, more than twenty-eight[,] [m]any of [which] recur on Mondays" and go back to April 24, 2017. (Grushka Decl. Ex. 5 at 2, ECF No. 36-5.) The memo also explained that these absences "are a violation of the agency's Time & Leave policy." Plaintiff admits to have stayed home from work on numerous Mondays throughout that time period and says that she did so because her partner was unable to commute with her on Mondays and that commuting alone would cause her to suffer "panic attacks and heightened anxiety." (Mesidor Decl. Ex. C ¶ 140; see also SUF ¶ 114.)

Finally, when ACS reached out on February 12, 2018 about an opportunity to serve in a "mostly administrative" role in another Queens location with a second-floor office space and "window in the area," plaintiff again refused, citing her fear of using an "enclosed and possible underground" parking garage. (Grushka Decl. Ex. 4 at 19, ECF No. 36-4.) When ACS clarified that the nearby garages were not enclosed or underground, plaintiff still declined. (Id. at 18-19.)

G.     Procedural History

Plaintiff received her Notice of Right to Sue from the EEOC on January 26, 2018. (Compl. at 33) and ultimately commenced this action on March 1, 2018, (see

generally Compl.)  The Complaint contains four allegations: (1) that City and ACS discriminated against her based on her disabilities (id. ¶¶ 168-75); (2) that City and ACS failed to provide her with a reasonable accommodation (id.); (3) that the defendants unlawfully retaliated against her for engaging in a protected activity; and (4) that the individual defendants, Diaz and Vega, aided, abetted, incited, compelled and coerced the discriminatory and retaliatory conduct that plaintiff experienced.  The first three claims are brought under both the ADA and the NYCHRL.  The fourth claim is brought pursuant to the NYCHRL only.

Defendants moved to dismiss on April 30, 2018, arguing that plaintiff failed to allege that she was qualified for her position and that she suffered a materially adverse employment action.  Defendants also argued that they met her accommodation needs but that she consistently declined their offers.  (See generally Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Compl. ("Defs.' First Mem."), ECF No. 15.)  Plaintiff opposed that motion on May 14, 2018 (ECF No. 17.)

This Court notified the parties on May 18 that it would convert the motion to one for summary judgment and invited the parties to submit additional materials. (ECF No. 19.)  Plaintiff filed supplemental opposition papers on May 25 (ECF No. 23), including a Local Civ. R. 56.1 Statement of Undisputed Material Facts (ECF No. 25.)  The defendants replied on June 15, 2018 (ECF No. 28), including by filing Responses to plaintiff's Local Civ. R. 56.1 Statement (ECF No. 37) and by filing a Counter-Statement of Undisputed Facts, (ECF No. 38.)  Plaintiff did not respond to defendants' Counter-Statement of Undisputed Facts.

II.    LEGAL PRINCIPLES

A.    Summary Judgment Standard

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In reviewing a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

B.      The ADA and the NYCHRL

Broadly, the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability" with regard to, among other things, the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). Similarly, section 8-107(1)(a) of the NYCHRL makes it unlawful "[f]or any employer or an employee or agent thereof, because of the . . . disability . . . of any person . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment."  Pursuant to amendments enacted by the New York City Council in the Local Civil Rights Restoration Act of 2005 (which resulted from the City Council's view that the NYCHRL had previously been "construed too narrowly"), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citations and quotation marks omitted).  Discrimination under both the ADA and NYCHRL can take place in a variety of ways, including inter alia by failure to accommodate and by retaliating against an employee for engaging in a protected activity.  The elements of each are discussed below.

1.      Disability Discrimination

a.  The ADA

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(a) that his employer is subject to the ADA; (b) that he is

11

disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)). Under the last element, a plaintiff must show that the adverse employment action "took place under circumstances giving rise to an inference of discrimination." Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000)). The Second Circuit has held that "[d]iscriminatory intent may be inferred from the totality of the circumstances." Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002) (quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995)).

Once a plaintiff makes a prima facie case of discriminatory motivation, "the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action" pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Davis, 804 F.3d at 235. If the employer succeeds in setting forth a non-discriminatory justification, "the plaintiff must then produce evidence capable of carrying the burden of persuasion that the employer's action was at least in part motivated by discrimination." Id. (citing, inter alia, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

b.  The NYCHRL

To prevail on a discrimination claim under the NYCHRL, a plaintiff must show that she was treated "less well" than other employees.  See Mihalik, 715 F.3d at 110 (citation omitted). That being said, the NYCHRL "is not a general civility code," and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Id. (internal quotation omitted).

2.      Failure to Accommodate

a.  The ADA

To establish a prima facie case of discrimination based on failure to accommodate under the ADA, a plaintiff must establish that (1) she is a person with a disability; (2) defendant had notice of her disability; (3) plaintiff could perform the essential functions of the job at issue with reasonable accommodation; and (4) defendant refused to make such accommodations.  Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).  "The term 'essential functions,' which is not defined in the statutes themselves, is generally defined in ADA regulations…to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'"  Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996)).

b.  The NYCHRL

The NYCHRL provides that a covered entity "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the

disability is known or should have been known by the covered entity." New York

City Administrative Code § 8-107(15)(a). And while it uses the term "essential

requisites" rather than "essential functions," courts have held that their meaning is

identical. See, e.g., Shannon v. New York City Transit Auth., 332 F.3d 95, 103-04

(2d Cir. 2003) ("[W]e see no reason to think that the NYCHRL and the ADA differ

in this requirement."); Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 254

(E.D.N.Y. 2015) ("The Administrative Code of the City of New York does not define

'essential requisite,' but courts considering the issue have held that it is equivalent

to the term 'essential function' prevalent in the ADA."); see also Jacobsen v. New

York City Health & Hosps. Corp., 11 N.E.3d 159, 173 (N.Y. 2014) ("[T]he relevant

inquiry is whether the employee was capable of performing the core functions of the

employee's position at the time that the employer refused to accommodate the

employee's disability."). Notably, however, "the employer, not the employee, has the

'pleading obligation' to prove that the employee 'could not, with reasonable

accommodation, satisfy the essential requisites of the job.'" Romanello v. Intesa

Sanpaolo, S.p.A., 998 N.E.2d 1050, 1053 (N.Y. 2013) (quoting Phillips v. City of New

York, 66 A.D.3d 170, 183 (N.Y. App. Div. 2009)).

### 3. Retaliation

#### a. The ADA

"To establish a prima facie case of discrimination based on retaliation under

the ADA, a plaintiff must establish that (1) the employee was engaged in an activity

protected by the ADA, (2) the employer was aware of that activity, (3) an

employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (quoting Sarno v. Douglas Elliman–Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir.1999)).

b.  The NYCHRL

Similarly, a plaintiff claiming retaliation under the NYCHRL must show (1) participation in a protected activity, (2) the defendant's knowledge of plaintiff's protected activity, (3) an adverse employment action against plaintiff, and (4) a causal connection between the protected activity and adverse employment action. Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011). However, an adverse act "need not result in an ultimate action with respect to employment, . . . or in a materially adverse change in the terms and conditions of employment, . . . provided . . . that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8–107(7)).  This means that "the employer's conduct need not be as severe to trigger liability."  Sotomayor v. City of New York, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013); see also Ben-Levy v. Bloomberg L.P., 2012 WL 2477685, at *10 (S.D.N.Y. June 26, 2012), aff'd, 518 F. App'x 17 (2d Cir. 2013) ("[Under the NYCHRL,] [u]nlike under federal and state law, the employer's actions need not be 'materially adverse'

to the plaintiff, but merely 'reasonably likely to deter a person from engaging in protected activity.'" (citing <u>Sotomayor</u>, 862 F. Supp. 2d at 262)).

III. DISCUSSION

    A.   <u>Plaintiff's Request for Discovery</u>

As a threshold matter, this Court rejects plaintiff's argument that summary judgment is premature at this stage. (<u>See</u> Pl's Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Plaintiff's Second Mem.") at 2-3, ECF No. 23.) The Court may deny or defer consideration of a motion for summary judgment if the nonmovant shows "that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). This rule reflects the concern that the "nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." <u>Trebor Sportswear Co. v. The Ltd. Stores. Inc.</u>, 865 F.2d 506, 511 (2d Cir. 1989).

Nevertheless, "the party opposing summary judgment is not automatically entitled to discovery." <u>Seneca Beverage Corp. v. Healthnow N.Y., Inc.</u>, 200 F. App'x 24, 27 (2d Cir. 2006) (citing Gualandi v. Adams. 385 F.3d 236, 244–45 (2d Cir. 2004)). Rather, the nonmoving party must support the opposition by affidavit or declaration describing: "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." <u>Gualandi v. Adams</u>, 385 F.3d 236, 244-45 (2d Cir. 2004)

(citing <u>Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy</u>, 891 F.2d 414, 422 (2d Cir. 1989)).

Here, plaintiff has not submitted the required affidavit or declaration, which alone is grounds for rejecting her request for discovery. <u>See</u> <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1137 (2d Cir. 1994) (addressing former Fed. R. Civ. P. 56(f) ("A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (citation omitted)).

Alternatively, the Court rejects the arguments that plaintiff included in her opposition papers. Specifically, she argues that the defendants alone possess information that is highly probative to her claims, including information concerning "the availability of positions at requested [work] sites" and the "inordinate delays in Defendants' responses." (Plaintiff's Second Mem. at 4.) But this argument is unavailing because plaintiff has equal access to all of her communications with defendants regarding her accommodation requests. Moreover, plaintiff had access to all of the materials that defendants annexed to their motion, which included ACS's EEOC Position Statement and its accompanying ehxibits. Among these exhibits are documents tracking reasonable accommodation requests, open positions, and caseworker assignments by site. (Grushka Decl. Ex. 1 at 87-94, 100-08.)

Having concluded that summary judgment is not premature, the Court addresses each of plaintiff's claims separately.

B.     Disability Discrimination

a.  The ADA

Plaintiff's disability discrimination claim fails under both the ADA and NYCHRL because the record makes clear that defendants did not take any actions with discriminatory intent.  Again, to establish a prima facie case of discrimination under the ADA, plaintiff must establish "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability."  Brady, 531 F.3d at 134. Defendants do not contest whether plaintiff can prove the first two elements. But plaintiff's claim must be dismissed because it fails to meet the third and fourth elements.

First, plaintiff has failed to create a triable issue of fact as to whether she is qualified to perform the essential functions of her position.  Under the ADA, "Essential functions" refers to the "'fundamental' duties to be performed in the position in question."  Stone, 118 F.3d at 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996)).  Here, plaintiff's job as a CPS required her to spend certain days each week "work[ing] primarily in the field making visits to [family's] homes [and] schools and other community agencies."  (Mesidor Decl. Ex. L at 2.)  Yet

plaintiff claimed that she required an accommodation that that would allow her to avoid fieldwork.

Moreover, plaintiff's argument on this element consists of a wholly conclusory assertion that she is qualified for her job. (See Plaintiff's Second Mem. at 5 ("[S]he is qualified for the position, as she can complete the essential functions of her job, with a reasonable accommodation, as Plaintiff had already been completing her duties, without the accommodation.").) But such "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks, 593 F.3d at 166 (internal citations omitted).

Additionally, plaintiff has failed to create a triable issue of fact as to whether she suffered an adverse employment action because of her disabilities. An adverse employment action under the ADA refers to a "'materially adverse change' in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Sanders v. New York City Human Res. Admin, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citations omitted). Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)). Additionally, Second Circuit case law requires proof that the adverse employment action "took place under circumstances giving rise to an inference of discrimination." Davis, 804 F.3d at 234

(internal quotation omitted).

Here, plaintiff points to three[4] allegedly adverse employment actions: being written up, being yelled at by her supervisor, and having emails about her accommodation requests go unanswered. (Plaintiff's Second Mem. at 5). Plainly, as a matter of law, none of these events qualify as <u>materially</u> adverse under the ADA. <u>See</u> <u>Weeks v. New York State (Div. of Parole)</u>, 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."); <u>Uddin v. City of New York</u>, 427 F. Supp. 2d 414, 429–30 (S.D.N.Y. 2006) ("[N]egative evaluations standing alone without any accompanying adverse consequences are not adverse employment actions.").

Alternatively, plaintiff's claim fails because there is no evidence in the record that defendants took these actions <u>because of</u> her disabilities. Instead, the evidence shows that plaintiff was written up twice for insubordination and for excessive absences, respectively. Likewise, there is no evidence (nor does plaintiff even argue) that defendants ignored her emails <u>because of</u> her disabilities. And finally, the purported confrontation with Vega about which plaintiff complains, even assuming her account is accurate, is irrelevant because the record makes clear that Vega confronted her about an email that was not at all related to

---

[4] In her opposition papers, plaintiff also argues that she suffered an adverse employment action in that other employees were accommodated at her preferred location, including at least four who held the same position. (Pl.'s Second Mem. at 5.) She fails, however, to point to any evidence (or even allege) that these individuals were suffering from the <u>same</u> disabilities and that they required the <u>same</u> kind of accommodation.

plaintiff's disabilities or her accommodation requests.

### b. The NYCHRL

Plaintiff's claim similarly fails under the NYCHRL. Even if the conduct discussed above could be used to prove that she was treated less well than other employees,[5] there is absolutely no evidence in the record that any of this conduct was undertaken with discriminatory intent. Accordingly, because plaintiff has failed to create a triable fact as to whether defendants discriminated against her based on her disabilities, that claim must be DISMISSED.

### C. Failure to Accommodate

#### a. The ADA

Plaintiff's claim that defendants failed to provide a reasonable accommodation in violation of both the ADA and NYCHRL also fails because defendants actually provided sufficient accommodation offers on multiple occasions. As previously noted, to establish a prima facie case of failure to accommodate under the ADA, plaintiff must demonstrate, inter alia, that she could perform the essential functions of the job at issue with reasonable accommodation and the defendant refused to make a reasonable accommodation. See Graves, 457 F.3d at 184. Here, plaintiff has failed to create a triable issue as to both elements.

First, plaintiff's claim fails for the same reason her discrimination claim fails—there is no evidence that she could perform the essential functions of her job duties with a reasonable accommodation. Importantly, "[a] reasonable

---

[5] Plaintiff has not actually argued that she was treated less well than other employees.

accommodation can never involve the elimination of an essential function of a job."
Shannon, 332 F.3d at 100.  Since fieldwork is an essential function of plaintiff's job
as a CPS, it would be unreasonable to require defendants to grant plaintiff an
accommodation that allowed her to "avoid fieldwork."

Alternatively, the Court concludes that defendants made multiple
"reasonable accommodation" offers.  The Second Circuit has repeatedly held that
employers are obligated to grant a "reasonable accommodation," not necessarily
"the accommodation the employee prefers."  Cosme v. Henderson, 287 F.3d 152,
158 (2d Cir. 2002); see also Wenc v. New London Bd. Of Educ., 702 F. App'x 27, 31
(2d Cir. 2017) ("[T]he ADA does not require the employer to provide every
accommodation the disabled employee may request so long as the accommodation
provided was reasonable."  (internal quotation omitted)).

Here, the record proves that City and ACS met their obligations but that
plaintiff repeatedly turned down accommodation offers based on irrelevant
concerns, including her distaste for a specific supervisor and her desire to work at a
specific office.  Likewise, plaintiff consistently complained about the cost and time
associated with commuting to the proposed sites, but has failed to cite any case
suggesting that an employer must accommodate an employee's commuting
preferences—likely because the case law cuts the other way.  See, e.g., Dudley v.
New York City Hous. Auth., 2014 WL 5003799, at *35 (S.D.N.Y. Sept. 30, 2014)
("The ADA does not obligate the employer to meet the personal preferences of
disabled employees . . . .  Accommodations need only be 'sufficient to meet the job-

related needs of the individual being accommodated.' Difficulties commuting to a job need not be accommodated." (quoting Raffaele v. City of New York, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004))).

Specifically, in July 2016, plaintiff asked for a reasonable accommodation that would allow her to "avoid[]" elevators, crowded public transportation, work spaces that are not well ventilated (windowness or lacking A/C), [and] fieldwork." (Grushka Decl. Ex. 3 at 9.) But when she was offered accommodations that fit her needs at a Staten Island and Manhattan office on September 6 and September 16, respectively, she complained about the cost of commuting to both locations, and asked to be accommodated at any Brooklyn or Queens location, noting that "I don't care what office." (Grushka Decl. Ex. 3 at 24; Ex. 2 at 22, 34.) And when she was offered a job in Brooklyn with a second-floor office, she refused to report to work and demanded a transfer to another Brooklyn site because she was worried about the potential for conflict with her new supervisor, a clear act of insubordination that landed her a formal citation. (SUF ¶ 47; Grushka Decl. Ex. 3 at 3-4, ECF No. 36-3.)

Finally, plaintiff rejected two separate accommodation offers in Queens, including a "mostly administrative" role with a second-floor office. (Grushka Decl. Ex. 4 at 5-8, 18-19) She rejected the first due to a purported "travel hardship" and the second based on her fear of parking in enclosed or underground parking garages, and she refused to reconsider even when ACS informed her that the nearby garages were not enclosed or underground.

b.  The NYCHRL

Plaintiff's reasonable accommodation claim under the NYCHRL fails for the same reason.  Specifically, defendants accommodated plaintiff on numerous occasions.  Accordingly, because plaintiff has failed to create a triable fact as to whether defendants provided her with a reasonable accommodation, that claim must be DISMISSED.

D.    Retaliation

a.  The ADA

Furthermore, plaintiff's retaliation claim under both the ADA and NYCHRL fails because there is no evidence in the record that defendants' took any actions that would deter plaintiff from engaging in protected activities.  Again, "[t]o establish a prima facie case of discrimination based on retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."  Weissman, 214 F.3d at 234 (quoting Sarno, 183 F.3d at 159).  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fey. Co. v. White, 548 U.S. 53 (2006).

The only protected activity that plaintiff discusses are her repeated requests

24

for a reasonable accommodation, and she argues that defendants' failure to accommodate her qualifies as an adverse action under both statutes. (See Pl.'s Second Mem. at 7.) This argument, however, amounts to an impermissible attempt to bootstrap her reasonable accommodation claim into a retaliation claim. See Daley v. Cablevision Sys. Corp., 2016 WL 880203, at *7 (S.D.N.Y. Mar. 7, 2016) ("Though '[r]equesting a reasonable accommodation of a disability is an ADA-protected activity, any activity comprising Plaintiff's failure-to-accommodate claim…cannot also constitute protected activity such as that required to form the basis of a retaliation claim.'" (alteration in original) (citations omitted) (quoting Snowden v. Trustees of Columbia Univ., 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014) aff'd, 612 F. App'x 7 (2d Cir. 2015)), aff'd, 675 F. App'x 97 (2d Cir. 2017)); Missick v. City of New York, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010) ("Defendants' alleged failure to accommodate her disability subsequent to an ADA, NYHRL, or NYCHRL protected request cannot be bootstrapped into a viable disability retaliation claim.").

Plaintiff's only remaining arguments are that she was written up and denied days off from work as retaliation for requesting accommodations. But these arguments fail for the same reason her discrimination claim fails: these events do not qualify as materially adverse employment actions. Additionally, there is no evidence that these actions were causally related to her request for an accommodation. Rather, she was written up on February 3, 2017 for failing to report to her newly assigned accommodation site and again on January 18, 2018 for

missing work on more than twenty-eight occasions.  Similarly, the evidence in the record indicates that ACS denied plaintiff's requests for unpaid leave on Mondays based on the agency's leave policies.  (See Grushka Decl. Ex. 5.)

### b.  The NYCHRL

Plaintiff's retaliation claim fails under the NYCHRL for the same reasons. While the NYCHRL does not require the event in question to be <u>materially</u> adverse and only that "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action," <u>Mihalik</u>, 715 F.3d at 112, it is still doubtful that the conduct complained here of qualifies as an adverse event—even under this more lenient standard.  By her own admission, plaintiff was not deterred from continuing to seek new accommodations.  (See Pl.'s Second Mem. at 7 ("Plaintiff engaged in a protected activity when she <u>repeatedly</u> requested a reasonable accommodation." (emphasis added)); <u>see also</u> <u>Chin v. N.Y.C. Hous. Auth.</u>, 106 A.D.3d 443, 444 (1st Dep't 2013) (holding that being "yelled at, subjected to the occasional offensive remark, . . . [and being] overworked and subjected to excessive scrutiny" is insufficient to constitute an adverse act under the [NY]CHRL).) Regardless, as discussed above, there is no evidence that this conduct was causally related to plaintiff's accommodation requests.  Accordingly, plaintiff's claim for unlawful retaliation under both the ADA and NYCHRL must be DISMISSED.

### E.    Aiding & Abetting

Finally, plaintiff's NYCHRL aiding and abetting claim against the individual defendants, Diaz and Vega, must be DISMISSED in light of the Court's decision to

grant defendants' motion for summary judgment as to all of the claims against City and ACS.  See Caravantes v. 53rd St. Partners, LLC, 2012 WL 3631276, at *20 (S.D.N.Y. Aug. 23, 2012) ("Aiding and abetting is only a viable theory where an underlying violation has taken place." (quoting Falchenberg v. New York State Dept. of Educ., 338 F. App'x 11, 14 (2d Cir.2009))).

IV.    CONCLUSION

For the foregoing reasons, defendants' converted motion for summary judgment at ECF No. 13 is GRANTED in its entirety.  The Clerk of Court is directed to close any open motions and to terminate this action.

SO ORDERED.

Dated:        New York, New York
              September 11, 2018

_____
        KATHERINE B. FORREST
        United States District Judge